IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| VICKIE LITTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:15-cv-00133 |
| ) | |
| SUMNER REGIONAL ) | JUDGE HAYNES |
| MEDICAL CENTER, LLC, ) | MAGISTRATE JUDGE BRYANT |
| ) | |
| Defendant. ) | |

## SECOND AMENDED COMPLAINT

COMES NOW Plaintiff, by and through undersigned counsel, and alleges the following in her cause of action against Defendant for violations of the Americans with Disabilities Act of 1990 and Amendments Act of, 2008, 42 U.S. C. 12101 *et seq.* and 42 U.S.C. 12111, *et seq.*; violations of the Age Discrimination in Employment Act of 1967; the Tennessee Disabilities Act, the Tennessee Human Rights Act, and the Tennessee Public Protection Act.

### PARTIES

1. Plaintiff Vickie Litts is a citizen and resident of Sumner County, Tennessee.

2. Defendant Sumner Regional Medical Center, LLC, is a foreign limited liability company that provides healthcare services. Its principal office is located at 103 Powell Court, Brentwood, Tennessee 37027. It can be served through its registered agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929.

## JURISDICTION

3. All of the events complained of herein occurred in this Judicial District and the defendant is an entity contained herein, which gives rise to venue in this district, under 28 U.S.C. § 1391(b).

4. This Court has jurisdiction over the lawsuit according to 28 U.S.C. §§ 451, 1331, 1337 and 1343. This Court has jurisdiction as it arises under the Americans with Disabilities Act Amendments Act of, 2008, and the Age Discrimination in Employment Act of 1967. The Court also has jurisdiction over the lawsuit pursuant to § 115 of the Civil Rights Act of 1991.

5. This Court also has supplemental jurisdiction over all state law claims alleged in this complaint under 28 U.S.C. §1367 as there is a common nucleus of operative facts between state and federal law claims.

## FACTS

6. Plaintiff Vickie Litts ("Plaintiff") was hired by Defendant Sumner Regional Medical Center, LLC, ("Sumner") on or around March 17, 1998 as an Assistant Nurse Manager.

7. Plaintiff's date of birth is February 11, 1958 and therefore she is over the age of 40.

8. On April 16, 2014 Plaintiff reported to work at Sumner. She was not feeling well that day and reported to co-workers that she had tingling from her feet to her face, a swollen throat, and difficulty breathing. Her muscles were also twitching. Plaintiff's co-workers insisted she go that da to the emergency room. Plaintiff went to the emergency room.

9. The two days prior Plaintiff had been working under conditions while the hospital floors were being stripped, cleaned, and waxed with harsh chemicals. Plaintiff had previously

complained to her director about her chemical sensitivities and other nurses were experiencing the same symptoms as Plaintiff. These included headaches, coughing and a swollen throat.

10. Plaintiff was treated in the Emergency Room and a panel of tests was done, including a urinalysis. Dr. Susan Geiger conferred with Plaintiff upon receiving the test results. Dr. Geiger reported that a barbiturate had been found in Plaintiff's system. Plaintiff denied using a barbiturate substance.

11. Dr. Marcos Cruz, neurologist and Medical Director at Sumner, then performed a medical exam on Plaintiff. Based on her report of symptoms and past diagnosis of restless leg syndrome Dr. Cruz recommended a prescription for anti-seizure medication. He personally wrote the prescription and handed it to Plaintiff.

12. Plaintiff informed her supervisor, Chris Hanton that she was being treated at the emergency room for symptoms she was experiencing as a result of chemical sensitivities to the chemicals being used on the hospital's floors.

13. Upon being discharged on April 16, 2103, Plaintiff was informed by her Unit Director Brenda Sanders, that she was aware of Plaintiff's reported symptoms and emergency room visit and for that reason Plaintiff was being taken off the schedule at this time "just in case." When Plaintiff asked why she was being taken of the schedule Sanders just said it was because she might not be "well" and "needed to rest."

14. Plaintiff was further informed by Sanders and Chris Hanton, nursing supervisor, that this situation was being treated as a workers' compensation claim because it had happened at work. Therefore Defendant perceived Plaintiff as disabled and due to that perception took her off the schedule and indicated it would be treating the situation as a workers' compensation matter because the illness occurred at work.

3

Case 3:15-cv-00133   Document 24   Filed 06/24/15   Page 3 of 10 PageID #: 355

15. Plaintiff was never given any workers' compensation claim paperwork to fill out and never received any type of claim or incident report relating to workers' compensation.

16. Plaintiff had previously submitted a workers' compensation claim in May 2011 because a combative patient struck her and hit her left arm. She complied with all the rules and regulations governing workers' compensation claims and was given light duty until released back to work with no restrictions.

17. Plaintiff was discharged from the emergency room. The papers given to her upon discharge indicated that no prescriptions were received because Dr. Geiger, the emergency room physician, had not written one. As noted above it was Dr. Cruz who gave Plaintiff a prescription.

18. However when Plaintiff picked up the prescription from her pharmacy on April 17, 2014 Dr. Geiger's name was on the bottle.

19. On April 17, 2014 Plaintiff was summoned to Sumner and asked to report to employee health. She was told by Ms. Sanders that the urinalysis and drug screen completed on April 16 should not have been done and those results would be destroyed, and that the emergency room visit on April 16 was now not considered workers' compensation. Since the situation was now not covered under workers' compensation the April 16 drug screen, taken because that is the practice for workers' compensation claims, was destroyed but Ms. Sanders then asked Plaintiff to submit to another urinalysis which would be considered a random drug screen. Plaintiff complied and another urine sample was collected for testing on April 17.

20. Plaintiff was not permitted to return to work as scheduled pending the results of the drug screens.

21. On April 21, 2014 Plaintiff received a phone call from Medical Review Officer Dr. Doug Aukerman. Dr. Aukerman stated that he had two urine drug screen reports, from April

4

Case 3:15-cv-00133   Document 24   Filed 06/24/15   Page 4 of 10 PageID #: 356

16 and April 17. Plaintiff asked why the April 16 sample had not been destroyed and Dr. Aukerman could not answer. He told Plaintiff that both specimens tested positive for barbiturates. Again Plaintiff denied using any barbiturate medication.

22. On April 22, 2014 Ms. Sanders arrived at Plaintiff's home unannounced. Ms. Sanders told Plaintiff that she was terminated and demanded Plaintiff's ID badge and told Plaintiff she would gather her personal belongings at work and make arrangements to get them to her.

23. Plaintiff was shocked and astonished at this sudden turn of events. Human Resources at Sumner had made no contact with her whatsoever and she was completely unprepared for her sudden termination.

24. Plaintiff was discriminated against on the basis of her perceived disability, and further retaliated against for complaints she had made previously about a doctor who was not making rounds as assigned and falsifying records.

25. Plaintiff was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation.

26. Plaintiff's complaints of medication errors in records were disregarded and in fact the clinical coordinator told Plaintiff that she took too long to write admission orders. This was because Plaintiff verified and double-checked the medication and resuscitation orders written in the records received upon patient intake. Plaintiff constantly found mistakes and life-threatening errors. She reported these but was only told she was "too picky."

27. Plaintiff was terminated in retaliation for refusing to participate in the illegal activity of doctors writing incorrect medication and resuscitation orders in patients' records.

28. Plaintiff was replaced by a substantially younger employee, name unknown.

29. Plaintiff was treated less favorably than younger employees outside of her protected class. It was the custom of Defendant to employ and favor younger nurses because they received lower pay. Other older nurses were terminated within the last year of Plaintiff's employment.

30. Plaintiff submitted a Charge of Discrimination on or around April 29, 2014 and she was issued her a Right to Sue letter.

31. Plaintiff filed her lawsuit timely after receiving her Right to Sue letter.

## COUNT ONE
## VIOLATIONS OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. 12111, *et seq.*

32. Plaintiff incorporates herein by reference the factual allegations as outlined in paragraphs 1 through 26.

33. Plaintiff has a disability as defined under the Americans with Disabilities Act as Amended (ADA), or was perceived to be disabled, and Defendant subsequently terminated Plaintiff in violation of the ADA.

34. Plaintiff was otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation.

35. As a direct and proximate result of Defendant's violation of the Americans with Disabilities Act as amended, Plaintiff has suffered, and continues to suffer, loss of income as well as other employment benefits.

## COUNT TWO
## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

36. Plaintiff incorporates herein by reference the factual allegations as outlined in paragraphs 1 through 26.

37. Plaintiff was qualified for her position.

38. Plaintiff was replaced by a substantially younger employee, name unknown.

39. Plaintiff was treated less favorably than employees outside of her protected class. But for her age, she would not have been terminated based upon Defendant's custom of terminating older employers.

40. The plaintiff alleges that the intentional acts and omissions as described herein committed by the defendant constitute violations of the Age Discrimination in Employment Act as a result of Plaintiff's age.

## COUNT THREE
## VIOLATIONS OF THE TENNESSEE DISABLITY ACT

41. Plaintiff incorporates herein by reference the factual allegations as outlined in paragraphs 1 through 26.

42. Plaintiff has a disability or is perceived to have a disability as defined by the Tennessee Disability Act, T.C.A. §8-50-103.

43. Plaintiff's physical impairment substantially limited one or more of her major life activities; Plaintiff had previously reported her illness to her supervisor.

44. Defendant's discrimination and termination of Plaintiff was part of a knowing and intentional pattern of discrimination in violation of the Tennessee Disability Act.

45. As a direct and proximate result of Defendant's violations of the Tennessee Disability Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT FOUR
## VIOLATIONS OF THE TENNESSEE HUMAN RIGHTS ACT

46. Plaintiff incorporates herein by reference the factual allegations as outlined in paragraphs 1 through 26.

47. Plaintiff is a "person" as defined by the Tennessee Human Rights Act.

48. Plaintiff was qualified for her position.

49. Plaintiff was replaced by a substantially younger employee, name unknown.

50. Plaintiff was treated less favorably than employees outside of her protected class. But for her age, she would not have been terminated based upon Defendant's custom of terminating older employers.

50. Defendant did segregate or classify Plaintiff based upon her age in a way that would tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee in violation of T.C.A. §4-21-401

51. As a direct and proximate result of Defendant's violations of the Tennessee Human Rights Act, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT FIVE
## VIOLATIONS OF THE TENNESSEE PUBLIC PROTECTION ACT
## T.C.A. §50-1-304 *et seq.*

52. Plaintiff incorporates herein by reference the factual allegations as outlined in paragraphs 1 through 26.

53. Plaintiff was an "employee" as defined by the cited statute.

54. Defendant did discharge Plaintiff in retaliation for refusing to participate in illegal activities when she reported to her supervisor and/or director that a doctor was writing medication orders incorrectly and endangering patients' lives and that she would not participate in ordering incorrect medication upon the patient's admission. Plaintiff also reported the illegal activity of a doctor whom was falsifying patients' charts and records.

55. As a direct and proximate result of Defendant's violations of the Tennessee Public Protection Law, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

1. That proper process issue be served upon the defendant and that the defendant be required to answer within the time prescribed by law.

2. The plaintiff receive compensatory damages, reinstatement, back pay, and front pay against the defendant in an amount supported by the proof in this cause.

3. That this Court grant a permanent injunction in joining the defendant, as officers, successors, assigns and all persons in active consort or participation with it, from engaging in employment practice which discriminates on the basis of age, gender, and/or disability.

4. That this matter be set for a trial by jury.

5. That the plaintiff be awarded her reasonable fees, costs, fees and expenses incurred herein.

6. For all such other general or specific relief to which the plaintiff may be entitled as the Court deems and as justice and equity require.

Respectfully submitted,

ANDY L. ALLMAN & ASSOCIATES

__/s/ Andy L. Allman_____
Andy L. Allman, BPR No. 17857
131 SAUNDERSVILLE RD., SUITE 110
Hendersonville, TN 37075
Telephone: (615) 933-0110
Facsimile: (615) 265-8766
andy@andylallman.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 23, 2015, the foregoing Second Amended Complaint was filed electronically with the Clerk of the Court to be served by Operation of the Court electronic filing system to the following counsel of record:

Mark W. Peters
K. Coe Heard
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Ph.: (615) 244-6380
mark.peters@wallerlaw.com
coe.heard@wallerlaw.com

               /s/ Andy L. Allman
               Andy L. Allman